**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MATTHEW CHARLES SCHLOBOHM,**

      **Plaintiff,**

      **v.**                        **CASE NO.  22-3314-JWL**

**CALVIN HAYDEN, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

Plaintiff Matthew Charles Schlobohm brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff was granted leave to proceed *in forma pauperis*.  Plaintiff is detained at the Johnson County Adult Detention Center ("JCADC") in New Century, Kansas.  For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.  Also before the Court is a motion for court order and preliminary injunction (Doc. 11) filed by Plaintiff.

**I.  Nature of the Matter before the Court**

Plaintiff alleges in the Complaint (Doc. 1) that he was attacked by another inmate, Daniel Arredondo, at about 2:30 a.m. on November 25, 2022, in his cell at the JCADC.[1]  Plaintiff was housed in protective custody at the time because he had sought "extra protection due his homosexual and Jewish status."  Doc. 1, at 2.  Plaintiff states that he had filed five (5) Prison Rape Elimination Act ("PREA") grievances seeking additional protection from Inmate Arredondo prior to the attack.  Plaintiff alleges that he reported being threatened by Arredondo and other inmates

---

[1]  Plaintiff does not describe the attack.

to Deputies Rettig, Douglas, Thompson, Martin, Riddell, Rundell, Ball, and Captain Crabtree, and nothing was done.  He asked Crabtree to be moved every Monday when she did her rounds, but she refused to do so.  He further states that he reported the threats to three medical staff members any time he encountered them.  Moreover, Plaintiff claims that Arredondo and other inmates taunted him in the presence of deputies, who did nothing.

Plaintiff states that after the attack, the defendants did not punish Arredondo, instead punishing Plaintiff by moving him to "the hole."  Plaintiff describes the hole as a room with feces all over that is unbearably cold with a non-functioning sink/toilet and water covering the floor.

Plaintiff further alleges that Defendant Ball stole his commissary items, including pens, paper, soap, and envelopes, on November 30, 2022.  According to Plaintiff, Ball also said they "wouldn't take [him] to court."  Doc, 1, at 8.

Plaintiff alleges the following violations: PREA violation; deliberate indifference to medical needs; unsafe and unsanitary conditions; sexual discrimination; due process of law; cruel and unusual punishment violations; equal protection clause violations; and violations of the First, Fifth, Eighth and Fourteenth Amendments.

Plaintiff names eighteen (18) defendants:  Calvin Hayden, Sheriff of Johnson County; (FNU) Reed, Jail Administrator; Captain Crabtree; Sergeant Bowers; Sergeant Edwards; Deputy Douglas; Deputy Riddell; Deputy Rundell; Deputy Thompson; Deputy Rettig; Deputy Martin; Deputy Wade; Deputy Trickle; unknown named Commissary Matron; Nurse Josh; Nurse Erin B.; and unknown named male white nurse.  He seeks relief in the form of a declaration that his constitutional rights have been violated, as well as compensatory damages in the amount of $150,000 from each defendant and punitive damages in the amount of $500,000 from each defendant.

**II.  Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual

allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's Complaint, the Court finds that the Complaint is subject to

dismissal for the following reasons.

## A. Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional

rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Plaintiff does not allege facts showing the personal participation of each named defendant in the alleged constitutional violations.  For instance, Plaintiff does not describe any actions taken by Defendant Hayden or Defendant Reed.  These defendants are therefore subject to dismissal from this action.

### B.  Failure to Protect

Plaintiff alleges that he told Defendants that Arredondo was taunting and threatening him, but they did nothing.  While Plaintiff does not mention a cause of action for failure to protect, he does mention the Eighth Amendment and the Due Process Clause.

"Prison and jail officials, as well as municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners.  Nonetheless, they have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Wright v. Collison*, 651 F. App'x 745, 748 (10th Cir. 2016) (unpublished) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1247–48 (10th Cir. 2015)).  Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment.  *Wright*, 651 F. App'x at 748 (citing *Lopez v. LeMaster*, 172 F.3d 756 n.2 (10th Cir. 1999)).  Even so, the Court applies an analysis identical to that applied in Eighth Amendment cases brought under § 1983.  *Id*.

"To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he [was] incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."  *Id*. (citing *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (brackets and internal quotation marks omitted)).

Deliberate indifference requires "a higher degree of fault than negligence." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (other citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  It follows that Plaintiff must allege facts indicating that Defendants actually knew of but disregarded a serious risk to him, rather than that they should have been aware of possible danger.  *Id.*  The mere fact that an assault occurred does not establish the requisite deliberate indifference to Plaintiff's constitutional rights.  *Hovater*, 1 F.3d at 1068.  Nor does an isolated attack by another inmate demonstrate a failure to protect.

Plaintiff states in the Complaint that he reported Arredondo's taunts and threats and that some defendants witnessed them.  What is unclear from the Complaint is whether the defendants were aware that Arredondo's threats posed a substantial risk of serious harm to Plaintiff.  The Complaint does not state, for instance, whether Arredondo had a history of violence while incarcerated, making the threats credible; whether he was threatening Plaintiff in particular; or how long Arredondo had been making threats directed at Plaintiff.  Officials may have been aware of the threats but not aware that the threats posed a significant risk.  *See Hovater*, 1 F.3d at 1066.

As for JCADC officials failing to move Plaintiff despite his requests, Plaintiff does not have a constitutional right to dictate where he or other inmates are housed.  *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013), citing *see Meachum v. Fano,* 427 U.S. 215, 228–29 (1976) and *Cardoso v. Calbone,* 490 F.3d 1194, 1197–98 (10th Cir. 2007); *see also Olim v. Wakinekona,* 461 U.S. 238, 245 (1983).  Courts must take into account that jail officials are entitled to great deference in the internal operation and administration of the facility.  *See Bell v. Wolfish,* 441 U.S. 520 (1979).

### C.  PREA Violation

Plaintiff cannot sue for violation of the PREA.  The PREA, 42 U.S.C. § 15601-15609, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983.  *Porter v. Jennings*, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012); *see also Burke v. Corr. Corp. of Am.*, No. 09-3068-SAC, 2010 WL 890209, at *2 (D. Kan. Mar. 10, 2010); *Moreno v. Corizon Medical Provider*, No. 16-CV-01063, 2017 WL 3052770, at *2 (D.N.M. June 21, 2017); *Moorman v. Herrington,* No. 4:08CV-P127-M, 2009 WL 2020669, at *2 (W.D. Ky. 2009)(collecting cases); *De'lonta v. Clarke,* No. 7:11–cv–00483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* (emphasis in original) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).  The Court concludes that, as a matter of law, Plaintiff cannot pursue a § 1983 claim based on an alleged failure to comply with the PREA.

### D.  Conditions of Confinement

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*

*v. Seiter*, 501 U.S. 294, 298 (1991). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

To state a claim of cruel and unusual punishment, the plaintiff has to establish "deliberate indifference." The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d at 1304. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer*, 511 U.S. at 832.

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride*, 240 F.3d at 1291; *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks."). It is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837–38; *Barney*, 143 F.3d at 1310.

Because the sufficiency of a conditions of confinement claim depends upon "the particular facts of each situation[,] the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain*, 264 F.3d at 974 (*quoting Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.*; *Barney*, 143 F.3d 1311. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration." *Id.*

Plaintiff's allegations about "the hole" do not state a constitutional violation as they stand. Courts have recognized that inmate exposure to sewage can constitute a serious risk to health. Nonetheless, the frequency and duration of the condition must be considered is assessing whether the condition is sufficiently serious to support a constitutional claim. *Shannon*, 257 F.3d at 1168. For example, a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). "Courts have repeatedly held that similar and far worse conditions fail to state a claim because of the brief nature of the incarceration." *Barney*, 143 F.3d at 1311 (*citing Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994 )(deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional); *Ogbolu v. McLemore*, 107 F.3d 21, *2 (10th Cir. 1997) (cold, wet, drafty, and unsanitary cell for two days

does not violate Eighth Amendment).  Here, Plaintiff fails to state how long he remained in the hole and how long the described conditions lasted.

In addition, Plaintiff's failure to cite evidence of physical injury to him from these conditions precludes the recovery of damages based on this claim.  *See Dickinson v. New Mexico Behavioral Health Institute*, 335 F. App'x. 729, 734 (10th Cir. 2009) (where plaintiff alleged unit was unsanitary and smelled of urine and feces, he could not recover compensatory damages absent proof of physical injury from the conditions); *see also* 42 U.S.C. § 1997e(e).

### E.  Medical Care

Plaintiff cites "deliberate indifference to medical needs" in his list of rights violations. However, his Complaint does not allege lack of medical care.  He only references medical personnel in connection with his failure to protect allegations.  Plaintiff does not state a claim for deliberate indifference to serious medical needs.

### F.  Property Claim

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Dusenbery v. United States,* 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48 (1993)) ("individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'").  However, "[t]he Fourteenth Amendment does not protect against all deprivations" of property but only against those "accomplished 'without due process of law.'"  *Baker v. McCollan,* 443 U.S. 137, 145 (1979); *Zinermon v. Burch,* 494 U.S. 113, 126 (1990) (A constitutional due process violation

that is actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); *see also Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (recognizing a due process deprivation does not occur "until and unless" the State provides or refuses to provide a suitable post-deprivation remedy).  In most circumstances, pre-deprivation process is expected.  *See, e.g., Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611 (1974). However, where it is impossible to provide a meaningful pre-deprivation hearing, the state must provide a meaningful post-deprivation hearing.  *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330 (1986).

In *Parratt,* the United States Supreme Court ruled that when a plaintiff alleges deprivation of a property interest occurring as a result of "a random, unauthorized act," the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy.  *Id.* at 541–43; *Hudson,* 468 U.S. at 533; *Zinermon,* 494 U.S. at 128 ("*Parratt* and *Hudson* represent a special case ... in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."); *Palmer v. Unified Government of Wyandotte County/Kansas City, Kansas,* 72 F. Supp. 2d 1237, 1252 (D. Kan. 1999).  Though *Parratt* involved negligent deprivations of property, the Court later held that this reasoning also applied to intentional deprivations of property.  *Hudson,* 468 U.S. at 533.

Accordingly, property loss claims are not cognizable under § 1983 in federal court when a state's post-deprivation remedies are adequate to protect a plaintiff's procedural due process rights. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment.  *Parratt,* 451 U.S. at 543–44; *McCormick v. City of Lawrence, Kansas,* 253 F. Supp. 2d 1172, 1198–99 (D. Kan. 2003) (citing *Hudson,* 468 U.S. at 530–33), *aff'd,*

99 F. App'x 169 (10th Cir. 2004); *see also Smith v. Colo. Dep't of Corr.,* 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").  Therefore, in order "to state a § 1983 claim, [Plaintiff] was required to plead the inadequacy or unavailability of a post deprivation remedy." *Montana v. Hargett,* 84 F. App'x 15, 16 (10ᵗʰ Cir. 2003) (unpublished) (citing *Durre v. Dempsey,* 869 F.2d 543, 548 (10th Cir. 1989) (affirming dismissal of plaintiff's due process deprivation of property claim, stating that "[i]n order to state a claim under § 1983, a complaint must allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy")).

Kansas provides post-deprivation remedies to persons who believe they have suffered a tortious loss at the hands of state officials.  For example, K.S.A. § 60–1005 provides a procedure for actions to recover personal property and specifically authorizes a replevin action for property in the custody of an officer as a result of any legal process. *See* K.S.A. § 60–1005(c) ("If the property the possession of which is sought is in the custody of an officer under any legal process it shall nevertheless be subject to replevin under this section").  Kansas law also provides for conversion actions (*see, e.g., Herndon v. City of Park City, Kan.,* 2007 WL 3171524, *3 (assertion that "property has either been lost or disposed of, or remains in possession of defendant or its agents" represents the "textbook definition of conversion")) and claims under the Kansas Tort Claims Act.  In addition, Kansas has a statutory scheme for returning property seized as evidence (see K.S.A. 22-2512) and the Kansas Standard Asset Seizure and Forfeiture Act (see K.S.A. 60-4101, et seq.).

These types of state procedures have generally been held sufficient to satisfy the requirements of due process. *Parratt,* 451 U.S. at 543–44; *see also Thompson v. City of Shawnee,*

*464 F. App'x 720, 724 (10ᵗʰ Cir. 2012); Harmon v. Williams,* 77 F. App'x 440, 441–42 (10th Cir. 2003) (unpublished); *Bridgeforth v. Field,* 153 F.3d 726, *2 (10th Cir. July 17, 1998) (Table), *cert. denied,* 525 U.S. 1154 (1999).  Courts in this district have specifically determined that these Kansas procedures are adequate post-deprivation remedies for the type of harm alleged in Plaintiff's Complaint.  *Roman v. FNU LNU Unknown State & Loc. Offs., Barton Cty., Kan.*, No. 12-3065-SAC, 2012 WL 1970384, at *4–5 (D. Kan. June 1, 2012) (citing *Herndon v. City of Park City, Kan.,* No. 07-1065-MLB, 2007 WL 3171524, at *3 (D. Kan. Oct. 25, 2007)).  These remedies provide all the process that is due to Plaintiff.

The Court finds that Plaintiff fails to state a plausible federal constitutional claim as a result of Defendant Ball's alleged theft of Plaintiff's commissary items because adequate post-deprivation remedies are available to Plaintiff in state court.

### G. Equal Protection

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike."  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *see also Fogle*, 435 F.3d at 1260 ("Equal protection is essentially a direction that all persons similarly situated should be treated alike.").  An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991).  Therefore, in order to succeed on an equal protection claim, Plaintiff must allege that he was "similarly situated" to other inmates and that the difference in treatment was not "reasonably related to legitimate penological interests."  *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); *see also Rider v.*

14

*Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)).  A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attacked in the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose."  *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)).  Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim.  First, there is a presumption in favor of validity of prison officials' disparate treatment.  *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003).  Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect"); *see also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

Plaintiff's equal protection claim is subject to dismissal for failure to allege facts establishing its essential elements.  He does not identify specific similarly situated individuals who received different treatment.  Furthermore, while he mentions that he is Jewish and gay, he does not allege facts suggesting that he was treated differently because he is Jewish, and sexual orientation has not been found to be a suspect classification under the Equal Protection Clause.

Plaintiff submits nothing more than unsupported allegations of improper intent of the defendants, allegations which are deficient in establishing a claim under § 1983.

### H.  Sexual Harassment

Plaintiff includes "sexual harassment" in his list of claims.  A sexual harassment claim is based on statutes prohibiting harassment in the workplace.  *See Thompson v. Wyandotte Cnty. Det.*, 869 F. Supp. 893, 894 (D. Kan. 1994).  Plaintiff advances no theories, law, or facts that would support a claim of sexual harassment.

### I. Claim for Damages

Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).  Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.  The Court finds that Plaintiff's claim for actual or compensatory damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why the claims and defendants discussed above should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file

a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the Court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (22-3314-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper amended complaint in which he concisely (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

### V.  Plaintiff's Motion for Court Order and Preliminary Injunction (Doc. 11)

Plaintiff filed a motion asking the Court to order the defendants to provide him with his prescribed medications, a typewriter, copy paper, large envelopes, standard envelopes, pens, postage stamps (as needed and unrestricted), folders for organizing his papers, and phone time to conduct interviews and work on his case as needed.  Plaintiff further asks the Court to compel Sheriff Hayden to provide him with a copy of his "full inmate record" and to compel Defendant Erin B. and Vital Core, LLC to provide him with a copy of his full medical record and a "full roster" of all Vital Core employees at the JCADC.  Last, Plaintiff seeks to add Vital Core as a defendant to his Complaint.

First, Plaintiff does not make allegations about his medical care in the Complaint, nor does he make a claim related to being deprived of writing or mailing supplies.  A preliminary injunction grants intermediate relief of the same character as that which may be finally granted.  *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220 (1945).  The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg,* No. CIV–09–320–C, 2010 WL 567998, at *1, *2 & n. 3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines,* 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")). Because most of the relief Plaintiff seeks in his motion goes well beyond the claims of the Complaint, the motion is denied.

Moreover, to obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the

movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they

are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

By this Order, the Court finds that Plaintiff's Complaint is subject to dismissal and directs him to show cause why his Complaint should not be dismissed for the reasons set forth above. The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

As for Plaintiff's request to add Vital Core, LLC as a defendant to the Complaint, he must submit a complete amended complaint to add claims, significant factual allegations, or change defendants. *See* Fed. R. Civ. P. 15.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Court Order and Preliminary Injunction (Doc. 11) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **March 3, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **March 3, 2023,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated February 1, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**